IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff,　　　　　　　　　　　　　　Case No: 21-cr-419

  v.

JOHN JURAN,

      Defendant.

### DEFENDANT'S SENTENCING MEMORANDUM

                                Eric M. Soehnlein, Esq.
                                *Attorney for John Juran*
                                LIPPES MATHIAS LLP
                                50 Fountain Plaza, Suite 1700
                                Buffalo, New York 14202
                                Telephone: (716) 853-5100
                                Facsimile:  (716) 853-5199
                                esoehnlein@lippes.com

I.  **Introduction**

On December 1, 2021, Mr. Juran pled guilty to a single count of Parading, Demonstrating, or Picketing in a Capitol Building in violation of Title 40, U.S.C., Section 5104(e)(2)(G). Mr. Juran's plea is a further step in his acknowledging that on January 6, 2021 he participated in the riot at the United States Capitol. Mr. Juran regrets his misconduct, and he does not condone the misconduct of those who were in the building with him that day. More importantly, he understands that his actions were both wrong and serious. As he has stated repeatedly since January 6, he is deeply sorry for his actions, and he wants to do what he can to make matters right. His guilty plea was just one aspect of what he has done to atone for his actions.

Mr. Juran understands there must be consequences for his actions. Still, there are several facts that counsel the Court toward leniency in this case:

- Mr. Juran has no criminal history, and he did not travel to Washington D.C. on January 6 with any criminal or malevolent intent;

- Mr. Juran was not a leader of the Capitol riot and did not plan to travel to the Capitol on January 6; rather, he followed other protesters from the White House and into the Capitol Building;

- Mr. Juran's time in the Capitol was limited in space and duration, consisting of standing near and inside of the Parliamentarian's Office for approximately ten minutes;

- The Government acknowledges that throughout the time he was inside of the Capitol, Mr. Juran was peaceful, non-violent and non-destructive; and

- From the outset, Mr. Juran has been candid, transparent and cooperative, acknowledging his wrongdoing and voluntarily meeting with the Government.

John Juran is a good person and an otherwise responsible citizen. On January 6, 2021, Mr. Juran exercised poor judgment. But he is more than his actions on that day. He is a dedicated father, a good friend, a responsible small business owner, and a good man. He is worthy of leniency. The Court should impose a sentence of Probation.

## II.   The Presentence Investigation Report

Mr. Juran participated in an interview to assist in the preparation of the Presentence Investigation Report in this matter ("PSR"). Mr. Juran has reviewed the contents of the draft that report, shared with counsel in late January, with counsel. The PSR is accurate. Counsel believes any discrepancies and/or inaccuracies within the report of immaterial to the resolution of this case.

## III.   John Juran

John Juran was born on August 30, 1969 in Lackawanna, New York. His parents were married until his mother's death when Mr. Juran was ten years old. Raised by his father, Mr. Juran had a happy, stable, suburban upbringing. He played baseball, football, ice hockey and soccer. Watching his father, who worked as a truck driver and steel plant worker, Mr. Juran learned the value of hard work. To this day he talks about the profound respect and admiration he has for his father and the work ethic his father instilled in him.

At a young age Mr. Juran also became fascinated with hunting, animal trapping, and the outdoors. In his teenage years he took it upon himself to get a job working at a nearby dairy farm so that he could spend time outside and with animals. He learned how to hunt and how to trap from reading books and experimenting on his own. From an early age, Mr. Juran knew he wanted to spend as much of his life as possible in the outdoors.

Mr. Juran graduated from Pioneer High School in 1987. He enrolled at Cobleskill College for one year, studying Fishing and Wildlife technology. After a year of study, Mr. Juran decided traditional college was not for him. After leaving college, Mr. Juran earned a living building houses, silos, barns and other structures. After that, he worked as an iron worker at Bethlehem Steel in Buffalo, New York. For a brief period, he worked alongside his father.

From 1998-2008, Mr. Juran was in a relationship with Linda Liberta. The relationship produced a son, Jack Juran (age 19). Even though the relationship fell apart, Mr. Juran has remained close with his son. He supports his son emotionally and financially. His son is currently studying to join the New York State Police. When his son is able, he helps Mr. Juran in his business. By all accounts, Mr. Juran is a loving and supportive father who provides direction and stability to his son.

Since 2009, Mr. Juran has been in a relationship with Gail Specter. The couple live together and, as is reflected in the accompanying PSR, both Mr. Juran and Ms. Specter report the relationship is loving and supportive. The PSR reports

4

Ms. Specter said Mr. Juran is a "good man with a good heart who helps those in need."

Since 1999 Mr. Juran has followed his passion and worked in his own business, Jack's Nuisance Wildlife Removal Corporation. Mr. Juran specializes in urban and suburban wildlife damage management for both residential and commercial customers. He is licensed by the New York Fish & Wildlife Commission and, as is set forth in greater detail in the PSR, Mr. Juran is a member and leader in several professional organizations. Of note, Mr. Juran is often contacted by local law enforcement when reports of dangerous pests are posing a danger to public health and welfare. Simply put, Mr. Juran performs an important service for public welfare.

Jerome L. Heaton, long-time neighbor and father of Mr. Juran's childhood friend, took the time to write on Mr. Juran's behalf. In the letter, Mr. Heaton recalls Mr. Juran's work ethic, his kind and humble demeanor, and the instances when Mr. Juran has been a good friend. Mr. Heaton notes that Mr. Juran is trustworthy, dependable, and a successful, hard-working businessman. **Exhibit 1.**

Bob Meakin, a fellow business owner performing wildlife removal services, also wrote on Mr. Juran's behalf. In his letter, Mr. Meakin notes Mr. Juran has been an honest resource, assisting him in his business, and also a dedicated friend, always eager to help. Mr. Meakin closes the letter reiterating the value of Mr. Juran's friendship and attesting to his character. **Exhibit 2.**

### IV. Mr. Juran's Conduct on January 6, 2020

For much of his life, Mr. Juran was not politically interested. He focused on his life and his business. He did not pay attention to politics. That changed with the election of Donald Trump when Mr. Juran took a brief interest in national politics.

As the Court knows, following the 2020 election President Trump asked his supporters to come to Washington D.C. on January 6, 2021 for a rally at the White House. Mr. Juran had never been to Washington D.C. Indeed, he had never been to a political event before. But, at the urging of friends who had also decided to attend the rally, Mr. Juran traveled to the White House to see the President. He did not plan or intend to do anything illegal. He did not bring any weapons, contraband or other materials with him evidencing an intent to engage in lawlessness, destruction of violence. Mr. Juran intended to be law-abiding and to support President Trump. After he saw the President, he planned to return home to Western New York.

Mr. Juran attended the rally with friends. In the course of the rally, attendees began making their way toward the United States Capitol Building at the urging of the speakers. Mr. Juran had never been to the Capitol or on Capitol grounds before. Following the crowd, Mr. Juran walked toward the Capitol, arriving approximately twenty minutes after the Capitol building had been breached by other individuals. Mr. Juran walked past torn down bike racks and observed other individuals scaling the scaffolding and media tower on the Lower

West Terrace of the Capitol. With others he climbed the steps leading to a non-public entrance. Mr. Juran entered the Capitol approximately one half hour after the building was breached by other individuals.

The Government agrees that while inside the building Mr. Juran was not destructive, and he was not violent. As is recounted in the PSR, Mr. Juran entered the Capitol Building and stood inside the hallway located near the Parliamentarian's Office. For approximately ten minutes, he walked around that hallway and briefly entered the office. He took photographs of the Capitol Building[1]. He spoke politely to Capitol police officers. He did not venture further into the building. He did not engage in violence. He did not take property from building. And he did not urge or incite other people to break the law.

At approximately 2:59 p.m., the crowd of people Mr. Juran was standing with were told to leave by law enforcement. At the same time, police were deploying tear gas and other devices to make the crowd disburse. Mr. Juran left the Capitol Building, having remained inside for approximately ten minutes. He met with his friends and returned home to Western New York.

Upon leaving, Mr. Juran started to realize the significance of the event. He reports to counsel that he regretted being a part of anything that disrespected the Capitol Building or his country. Feeling that regret, Mr. Juran deleted the photos

---

[1] As is evidenced in the pictures of Mr. Juran in the Capitol building, while inside Mr. Juran took photographs of the building's architecture and artwork. In speaking with counsel, he reports he was impressed with the structure and its nuances. He did not take pictures of violence, law enforcement, or any other aspect of the riot.

7

and videos he took inside of the Capitol on January 6. He made the deletion before he was aware of any criminal charges against him.

Mr. Juran was arrested on this matter on May 19, 2021. His arrest, and all subsequent events in this case, have received significant negative attention from local media in the Western New York area. Regardless, from the outset, Mr. Juran has been candid with law enforcement and the Government about his actions. He is remorseful. Indeed, after obtaining counsel, he met with the federal prosecutors and Government agents on September 30, 2021, detailing his conduct on January 6, 2021 and truthfully answering their questions. Mr. Juran has never contested his conduct. He has never made excuses for what he did. From the beginning, he has been eager to admit his conduct and make amends for his role on January 6.

## V.     Mr. Juran Accepts Responsibility for His Actions

Mr. Juran regrets that he broke the law. He is remorseful for his participation in an event that, with the benefit of hindsight, he acknowledges the events of January 6 were disrespectful to the country and caused needless damage. He understands that there must be consequences for his poor judgment. He will accept the consequences of his actions.

In anticipation of his interview with Probation for the PSR, Mr. Juran prepared the following statement, which was shared with Officer Guzman-Garcia:

> On January 6, 2021 I went to Washington D.C. to attend the President's rally. I did not intend to participate in any unlawful activity. As the crowd moved toward the Capitol, I moved with it. I followed people into the Capitol

> building. I stayed there for a short period of time taking pictures and watching the events unfold.
>
> I understand that my actions broke the law. I also understand the seriousness of what occurred on January 6. I am sorry for what I did. I regret that I entered the Capitol. I have respect for our country and for its institutions. I hope my plea plays a role in putting what occurred on January 6 behind us.

Mr. Juran echoed those sentiments in his PSR interview. There, Mr. Juran noted he was repentant, and that he was sorry he entered the Capitol building. He also recalled that years ago, when his son was in minor legal trouble, Mr. Juran advised his son that he should always act like there are cameras everywhere so that he does not do anything he will live to regret. Not only did Mr. Juran forget his advice, but in exercising poor judgment, he also failed to be a role model to his son – a further point of regret that has come from this incident.

## VI. The Court Should Impose a Sentence of Probation

Mr. Juran has no significant criminal history. He is a responsible small business owner who is, by all accounts, a supportive partner, dedicated father and good friend. His misconduct was not pre-meditated, but rather was the result of poor judgment at a time when he was following the crowd. His time in the Capitol Building, which was limited in duration and scope, did not include destruction or violence. Mr. Juran entered the Capitol with the crowd, took photographs of the building, and left when he was directed to.

Given the stipulated facts of his case, and in light of the factors to be considered under 18 U.S.C. § 3553, we believe a sentence of probation is

appropriate. As the Court knows, the law contemplates that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in 3553. We believe each of the 3553 factors favors leniency in this case.

### a. Seriousness of the Offense

While Mr. Juran acknowledges his misconduct and the consequences that misconduct had, there are several well-settled principles of federal law that should counsel the Court toward leniency on this factor.

As a threshold matter, it is well settled that where an defendant's conduct is non-violent, there is less need for punishment or retribution and harsh punishment. This principle finds statutory support – Congress tasked the Sentencing Commission with "insuring that the Guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). Here all parties agree Mr. Juran was non-violent and did follow the directives of law enforcement when he and others were told to exit the Capitol Building.

Perhaps more importantly, an offense is "less serious" where, as is this case, the defendant's motives were not at all or not entirely reprehensible, where the defendant's role or gain from the offense was comparatively minor, and where restitution was made in whole or in part. *See, e.g., United States v. Zavala*, 300 F.

App'x 792 (11th Cir. 2008).  Here Mr. Juran's aim in attending the rally and walking to the Capitol was to support the President.  His role was minor.  And, in accord to the Plea Agreement, Mr. Juran will make timely restitution for his role in the offense.

### b. Deterrence to Further Criminal Conduct

As the Court knows, Mr. Juran has no prior criminal history.  On the facts before the Court, there is no suggestion that he is likely to engage in criminality in the future.

With regard to general deterrence, we believe the interests and goals of federal law are met by the prosecution of those who participated in the events of January 6, 2021.  As the Court knows, the events of that day, and the subsequent prosecution and guilty pleas that have resulted, have garnered national media attention.  The public understands the seriousness of the conduct that occurred on January 6 and that individuals who similarly disregard the law are subject to the penalties of federal criminal law.  Indeed, many of the defendants in the January 6 matter – defendant included – have been scrutinized and condemned in local and national media.  Indeed, the extra-judicial penalty should be considered by the Court and should weigh in favor of a more lenient sentence.

### c. Rehabilitation in the Most Effective Manner

Section 3553(a)(2)(D) requires the Court to consider the "need for the sentence imposed…to provide the defendant with needed educational or vocational

training, medical care, or other correctional treatment in the most effective manner." As the Court knows, incarceration – of any duration – disrupts employment, reduces prospects of future employment, weakens family ties, and has the potential to expose non-serious offenders to more serious offenders.

What is more, Mr. Juran's misconduct will be most adequately addressed through Probation and supervision. His misconduct stemmed from poor judgment in following the crowd into the Capitol. It was not premeditated. It was not violent. And, compared to the rest of Mr. Juran's life, the incident was isolated and unlikely to be repeated.

### d. Consistency of Sentences

As the Court knows, hundreds of individuals present at the Capitol on January 6, 2021 have been charged because of their misconduct. Several of those charged have pled guilty, and many have been sentenced.

Counsel has reviewed the publicly available information about many of the other January 6 cases. In counsel's review, Mr. Juran falls into a category of misdemeanor defendants who:

- Were not leaders or planners of the events of the January 6;
- Did not demonstrate intent or pre-meditation;
- Were not violent or destructive within the Capitol; and
- Did not take items from the Capitol.

From counsel's review, those individuals have generally been sentenced to a period of Probation and been ordered to pay restitution for their misconduct. We believe that is the appropriate sentence for Mr. Juran.

### VII. Mr. Juran Respectfully Requests Any Probation Allow Him to Use Firearms in Connection to His Job

As is noted the PSR, Mr. Juran's wildlife removal business serves an important public health function in the Western New York region. He is often called upon by law enforcement and local residents to remove and dispose of dangerous pests that threaten the public health. As part of that work, until the time he was charged in this case, Mr. Juran carried a firearm so that he was able to protect humans from the potential harm of dangerous pests and so that he could euthanize animals if necessary. Simply put, in his job Mr. Juran uses a firearm to protect himself and others from very dangerous animals.

As the Court knows, Mr. Juran's offense does not include violence. It does not include a weapon. Indeed, in Mr. Juran's history, there is no allegation that he has ever been violent or destructive or that he has ever used a firearm or any other weapon in an irresponsible manner.

In light of the foregoing, we respectfully request that the any conditions of Probation allow Mr. Juran to continue using a firearm in connection to his professional work.

## VIII. Conclusion

On January 6, 2021 John Juran exercised poor judgment. Following a crowd of people, he unlawfully entered the United States Capitol. He understands the magnitude of the events of January 6, and he regrets his participation. He has admitted his guilt, accepted responsibility for his actions, and is eager to accept the consequences so that he and the country can move forward.

While Mr. Juran engaged in wrongdoing, there are many factors that must counsel this Court toward leniency. Mr. Juran was not a leader, was not violent, and was not destructive on January 6. He had no plan to enter the building. When he was told to leave the building by law enforcement, he exited. He acknowledged his wrongdoing to the Government, candidly and voluntarily detailing his actions of January 6. And a review of Mr. Juran's personal life reveals a man who is a good father, good husband, responsible small business owner, and otherwise law-abiding citizen. The Court should impose a sentence of probation.

Dated: February 18, 2022
Buffalo, New York

s/Eric M. Soehnlein
Eric M. Soehnlein, Esq.
LIPPES MATHIAS LLP
*Attorneys for John Juran*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
Facsimile: (716) 853-5199
esoehnlein@lippes.com